Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Paola S. Rodríguez Díaz<br><br>Recurrida<br><br>vs.<br><br>Flash Auto Imports, Inc.<br>Popular Auto LLC<br><br>Recurrente | KLRA202400014 | **REVISIÓN ADMINISTRATIVA** procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: SAN-2022-0012725<br><br>Sobre: Compraventa de Vehículos de Motor |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de febrero de 2024.

Comparece ante nos, Flash Auto Imports, Inc. (FAI o parte recurrente), quien presenta recurso de revisión administrativa en el que solicita la revocación de la "Resolución" emitida el 22 de noviembre de 2023,[1] por el Departamento de Asuntos del Consumidor (DACo). Mediante dicha determinación, el DACo decretó la resolución del contrato de compraventa suscrito entre la parte recurrente y la señora Paola S. Rodríguez Díaz (Sra. Rodríguez Díaz o parte recurrida).

Examinada la solicitud de autos, el "Alegato en Oposición a Recurso de Revisión", la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, confirmamos el dictamen mediante los fundamentos que expondremos a continuación.

**I.**

Tras la compra de un vehículo de motor, el 1 de diciembre de 2022, la Sra. Rodríguez Díaz presentó una "Querella" ante el DACo

---

[1] Notificada en igual fecha.

Número Identificador

SEN2024 _____

contra FAI y Popular Auto LLC (Popular Auto). En esencia, alegó que el vehículo adquirido presentaba desperfectos mecánicos, y que tenía un motor que no le correspondía a ese carro. Por esto, solicitó la cancelación del contrato de compraventa.

Se señaló vista en su fondo para el 13 de octubre de 2023, a la cual comparecieron ambas partes. Tras un análisis de la prueba documental y testifical presentada, el 22 de noviembre de 2023,[2] el DACo emitió una "Resolución" mediante la cual formuló las siguientes determinaciones de hecho, las cuales hacemos formar parte íntegra del presente dictamen:

*1. Mediante contrato fechado 5 de agosto de 2022, la querellante Rodríguez Díaz, adquirió de los querellados Flash Auto Imports, un vehículo usado descrito en el contrato como un Kia del año 2017, Modelo Soul, Color Silver, número de motor (VIN #) KNDJP3A5XH7431914.*

*2. El precio de compra pactado por las partes fue por la suma de $18,995.00 más $995.00 por un 'protector'. El precio fue satisfecho en su totalidad por la querellante mediante un pronto pago por la suma de $3,000.00 y financiando un balance de $16,990.00 por medio de Popular Auto, número de préstamo 82200136800260001.*

*3. El primero de diciembre de 2022 se radica la querella de epígrafe alegando en síntesis que el vehículo venía presentando varios desperfectos y que el 'motor no le correspondía al carro'. Se solicitó la cancelación inmediata del contrato.*

*4. Con fecha de 6 de marzo de 2023 se presentó un primer informe de inspección indicando los desperfectos que presentaba el vehículo y que en ese momento eran reparables. Oportunamente, la parte querellante presentó objeción a dicho informe, solicitó la re inspección del vehículo para que de esta manera se pudiera corroborar la alegación en torno al número de motor.*

*5. La re inspección del vehículo se llevó a cabo el 9 de agosto de 2023. Entre otras cosas, se concluyó por el técnico que "el vehículo no está apto para correr en las carreteras por reglamentaciones estatales y federales. Registración de motor requerido por el negociado de vehículos hurtados en la policía de Puerto Rico. Control de emisiones por la EPA federal, DACO, y Calidad Ambiental del Estado Libre Asociado de Puerto Rico". Testificó que el número de serie (VIN #) es como una 'huella dactilar'. Aparte de la registración del motor, testificó que los demás desperfectos que presenta el vehículo son reparables.*

---

[2] Notificada en igual fecha.

*6. Conforme se desprende del informe de re inspección, el número de serie del motor del vehículo en cuestión es KNDJ33AU1L7023992.*

*7. Conforme se desprende de la certificación emitida por el DTOP fechada 14 de agosto de 2023, ese número de motor corresponde a un Kia Soul del año 2020 color blanco, registrado a nombre de Universal Insurance Company.*

*8. La Sra. Aida Merle Ibarra, dueña del dealer de autos querellado, testificó que se dedicaba desde hace más de 10 años a comprar vehículos en subasta, acepto que el tipo de problema que se presenta en este caso puede surgir cuando se compran vehículos en subasta y admitió que este vehículo ella no lo inspeccionó para asegurarse que los números de motor y de la caja eran los mismos. Testificó estar dispuesta a reparar el vehículo incluyendo reemplazar el motor de ser necesario.*

Considerando la reglamentación aplicable, el DACo razonó que, antes de vender el vehículo, FAI tenía que completar el registro del motor. Asimismo, determinó que, al momento de la venta, la parte recurrente debía informarle a la parte recurrida que el motor no era el original. Sin embargo, concluyó que la evidencia admitida demostró que ninguna de estas condiciones se cumplió. Ante ello, dispuso que el vehículo adquirido por la Sra. Rodríguez Díaz no puede ser utilizado en las vías públicas del País. Por entender que los incumplimientos recaen sobre "el corazón del vehículo",[3] entiéndase, sobre un aspecto determinante del contrato, y considerando que el desperfecto no puede ser corregido, resolvió que procedía la resolución del contrato de compraventa suscrito entre ambas partes. Así, ordenó a FAI y Popular Auto a restituir, solidariamente, el pronto pagado y las mensualidades satisfechas, más el pago de angustias mentales y honorarios de abogado.

Inconforme, el 9 de diciembre de 2023, FAI presentó una "Moción Solicitando Reconsideración" y, entre otras cosas, argumentó que: (1) no tenía conocimiento sobre el motor incorrecto, (2) nunca se probó su intención de ocultar información

---

[3] Véase, "Resolución" a la pág. 9.

relacionada al motor, (3) tampoco se demostró que el vehículo no funcionaba en forma normal, (4) los problemas que enfrenta el vehículo no impiden su funcionamiento normal, y (5) siempre estuvo a disposición de ayudar a la parte recurrida y sus actuaciones fueron de buena fe.

Atendida su solicitud, el 13 de diciembre de 2023,[4] el DACo emitió una "Resolución" declarando No Ha Lugar la "Moción Solicitando Reconsideración" presentada por la parte recurrente. De esta forma, se dejó en pleno vigor y efecto la determinación recurrida.

Aún insatisfecha, FAI recurre ante este foro apelativo intermedio, y señala la comisión del siguiente error:

> *Erró el Honorable DACO al decretar la resolución del Contrato de Compraventa; ordenar solidariamente a las querelladas al pago del pronto y mensualidades efectuadas por la querellante en esta transacción; ordenar el pago del interés legal correspondiente; más el pago de $1,000 por angustias mentales.*

## II.

### -A-

En virtud de la Ley Núm. 7 del 24 de septiembre de 1979, 10 LPRA sec. 2051 *et seq.*, mejor conocida como la Ley de Garantías de Vehículos de Motor, según enmendada, el DACo adoptó el Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 7159 del 6 de junio de 2006 (en lo sucesivo, Reglamento de Garantías). Este último cumple varios propósitos, tales como: (1) proteger al consumidor y sus inversiones en la adquisición de vehículos de motor; (2) procurar que el vehículo sea seguro y cumpla con el propósito por el cual fue adquirido; y (3) prevenir prácticas ilícitas en la venta de vehículos de motor. Véase, Art. 2 del Reglamento de Garantías. Por esta razón, las disposiciones de

---

[4] Notificada el 14 de diciembre de 2023.

este cuerpo reglamentario deberán interpretarse liberalmente y en favor del consumidor.  Véase, Art. 4 del Reglamento de Garantías.

En lo que nos concierne, la Regla 30 del Reglamento de Garantías dispone que, al momento de vender un vehículo de motor usado que fue impactado y reparado posteriormente, el vendedor deberá notificar este detalle al consumidor.  No tan solo deberá indicárselo verbalmente, sino que también deberá plasmarlo por escrito en el contrato de compraventa.  *Íd.*

A su vez, la Regla 31 del Reglamento de Garantías establece que, para poder vender un vehículo usado, es necesario que este haya pasado por la inspección que requiere la ley. Asimismo, el vendedor deberá asegurarse "que tenga el 'vin number' en todas las piezas". *Íd.*

En caso de que un vehículo usado tenga defectos, el vendedor posee una oportunidad razonable para repararlos. Véase, Regla 29 del Reglamento de Garantías.  Sin embargo, si el vendedor no quiere o no puede reparar el defecto dentro de un término razonable, el DACo está facultado para decretar la resolución del contrato o reducir el precio de venta, a elección del comprador.  *Íd.*

**-B-**

En virtud del Art. 1261 del Código Civil, 31 LPRA sec. 9851, la persona que transmite un bien a título oneroso está obligada al saneamiento de la cosa vendida.  Esta obligación de saneamiento existe en casos de evicción, o cuando hay defectos o vicios ocultos en la cosa vendida.  *Íd.* En este último caso, entiéndase, cuando existen defectos ocultos en el bien, el transmitente será responsable, aunque los ignore. *Íd.*

Ahora bien, para que los vicios ocultos puedan ser objeto de saneamiento, deben cumplirse los siguientes criterios: (1) el bien fue transmitido a título oneroso, (2) el vicio es preexistente al

momento de la venta, (3) este no era conocido por el adquirente, (4) se trata de un defecto grave o suficientemente importante para hacer la cosa impropia para el uso a que se le destina o que disminuya de tal modo su utilidad que, de haberlo conocido el adquirente, no la habría comprado o habría dado menos precio por ella, y (5) que se ejercite la acción dentro del plazo legal. Véase, Art. 1267 del Código Civil, 31 LPRA sec. 9871; *Ferrer v. General Motors Corp.*, 100 DPR 246, 255-256 (1971).

Si se cumplen estos criterios, "[e]l adquirente puede optar por reclamar la subsanación o reparación de los defectos, la entrega de un bien equivalente o resolver total o parcialmente el contrato". Art. 1263 del Código Civil, 31 LPRA sec. 9853. No obstante, la resolución total del contrato solo procede cuando el defecto recae sobre un aspecto determinante para la adquisición del bien. *Íd.* A su vez, "el adquirente solo tiene derecho al resarcimiento de los daños sufridos si el transmitente actuó con dolo". *Íd.*

**-C-**

El Código Civil de Puerto Rico, 31 LPRA sec. 5311 *et al,* define el contrato como "el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". Art. 1230 del Código Civil, 31 LPRA sec. 9751. Adicionalmente, establece que "[e]l contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva". Art. 1237 del Código Civil, 31 LPRA sec. 9771. Una vez las partes prestan su consentimiento, éstos quedarán obligados al cumplimiento de la obligación pactada, ya que "[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y

ante terceros en la forma que dispone la ley". Art. 1233 del Código Civil, 31 LPRA sec. 9754. Así, para que un contrato se considere válido, se requiere que concurran tres elementos esenciales, a saber: (1) consentimiento de los contratantes, (2) objeto cierto del contrato y (3) la causa de la obligación que se establezca. *Aponte Valentín et al. v. Pfizer Pharm.,* 208 DPR 263 (2021). La falta de alguno de ellos será causa de nulidad del contrato y, por tanto, inexistente en el orden jurídico. *Rosario Rosado v. Pagán Santiago,* 196 DPR 180, 188 (2016).

Ahora bien, un contrato puede ser nulo de su faz cuando hay ausencia total de consentimiento, o meramente anulable cuando existe algún vicio de la voluntad, y este fue determinante para su otorgamiento. Art. 286 del Código Civil, 31 LPRA sec. 6192. Los vicios de la voluntad son: (1) el error, (2) el dolo, (3) la violencia y (4) la intimidación. Art. 285 del Código Civil, 31 LPRA sec. 6191. La prueba de la existencia del vicio y de su carácter incumbe a quien lo alega. Art. 286 del Código Civil, *supra.* En aquellos casos en los que se aduce que la voluntad del otorgante estuvo viciada por dolo, el causante de éste quedará sujeto a la indemnización de los daños y perjuicios resultantes. *Íd.* Nuestro Código Civil distingue entre dos tipos de dolo: (1) dolo incidental y (2) dolo grave. La distinción entre uno y otro radica en las circunstancias en las que ocurre el dolo, lo que a su vez determina el efecto que tendrá sobre el negocio jurídico.

El dolo incidental es aquél que no tiene una influencia decisiva en la esencia de la obligación. *Colón v. Promo Motor Imports, Inc.,* 144 DPR 659, 667 (1997). En otras palabras, ya la parte tenía la voluntad de contratar, pero existe un engaño en el modo en que se celebra el negocio jurídico. *Íd.* O sea, que el dolo incidental solo facilita la celebración del contrato, ya que, sin éste, el contrato de todas formas se hubiera celebrado, aunque bajo

distintas condiciones. *Íd.* Este tipo de dolo no invalida el negocio jurídico, pero su autor debe indemnizar el daño causado, salvo que exista dolo recíproco. Art. 294 del Código Civil, 31 LPRA sec. 6213. Por su parte, el "[d]olo grave es la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado". Art. 292 del Código Civil, 31 LPRA sec. 6211. A diferencia del caso anterior, el dolo grave se refiere a aquellos casos en los que no existe predisposición de la parte para realizar el acuerdo, sino que ésta presta su consentimiento precisamente por la acción u omisión intencional constitutiva del dolo. En estos casos, "si la acción u omisión no provoca la realización del negocio jurídico, el perjudicado puede reclamar los daños y perjuicios que sufra". *Íd.* El dolo ha sido entendido como "todo un complejo de malas artes, contrario a las leyes de la honestidad e idóneo para sorprender la buena fe ajena, generalmente en propio beneficio". *SLG Ortiz-Alvarado v. Great American,* 182 DPR 48, 63 (2011), citando a L. Díez-Picazo, Fundamentos del Derecho Civil Patrimonial, 6ta ed. Navarra, Ed. Thomson/Arazandi, 2007, Vol. I, pág. 170. El elemento objetivo del dolo puede consistir en cualquier conducta como astucias, argucias, mentiras, sugestiones, artificios, invención de hechos falsos, ocultación de los existentes o en suministrar referencias incompletas de éstos. *SLG Ortiz-Alvarado v. Great American, supra*, a las págs. 64-65. El dolo "se caracteriza como la infracción voluntaria y consciente de un deber jurídico que ocasiona al otro contratante un perjuicio del que debe responder". *Íd.* a la pág. 68, citando a *Márquez v. Torres Campos,* 111 DPR 854, 865 (1982).

**-D-**

El mecanismo de acumulación de parte indispensable está regulado por la Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V,

R.16.1, establece que "[l]as personas que tengan un interés común sin cuya presencia no puede adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda". El "interés común" al que hace referencia la precitada regla, no se refiere a cualquier interés que una parte pueda tener en el pleito, sino a "un interés real e inmediato, no especulativo ni a futuro, que impida la confección de un remedio adecuado porque podría afectar o destruir radicalmente los derechos de esa parte ausente". *RPR & BJJ, Ex Parte*, 207 DPR 389, 408 (2021).

La doctrina sostiene que una parte indispensable es "aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada, estando esta persona ausente del litigio". J.A. Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, San Juan, Pubs. JTS, 2000, T. I, pág. 371. En otras palabras, es aquella parte de la cual no se puede prescindir, pues, de lo contrario, las cuestiones litigiosas no pueden adjudicarse correctamente, ya que su presencia es indispensable para conceder un remedio final y completo sin afectarlo. *López García v. López García*, 200 DPR 50, 63 (2018).

Ahora bien, "[l]a omisión de incluir a una parte indispensable incide sobre el debido proceso de ley que cobija al ausente". *Colón Negrón et al. v. Mun. Bayamón*, 192 DPR 499, 511 (2015). Por tanto, el mecanismo establecido en la Regla 16.1 de Procedimiento Civil, *supra*, parte de dos principios fundamentales: (1) garantizar la protección constitucional de que una persona no sea privada de la libertad y propiedad sin un debido proceso de ley, y (2) la necesidad de que el decreto judicial emitido sea completo. *López García v. López García, supra*, a la pág. 64.

Es por esto que nuestro Tribunal Supremo ha expresado que, "[a]nte la ausencia de una parte indispensable, el tribunal

carece de jurisdicción para resolver la controversia". *Bonilla Ramos v. Dávila Medina*, 185 DPR 667, 677-678 (2012). Al incidir tal ausencia sobre la jurisdicción del tribunal, deberá entonces desestimarse la acción. *Íd.*, a la pág. 678. A tenor, la falta de parte indispensable constituye una defensa irrenunciable, la cual puede presentarse en cualquier etapa del litigio, incluso en la apelativa. *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 223 (2007). En consecuencia, los tribunales apelativos deben levantar *motu proprio* la falta de parte indispensable, debido a que ésta incide sobre su jurisdicción. *Íd.*, a las págs. 223-224. No obstante, dicha desestimación no tiene el efecto de una adjudicación en los méritos ni de cosa juzgada. *Íd.*, a la pág. 224.

Adicionalmente, nuestro Alto Foro ha expresado que la interpretación de la Regla 16.1 de Procedimiento Civil, *supra*, requiere de un enfoque pragmático. *Romero v. S.L.G. Reyes*, 164 DPR 721, 732 (2005). Es decir, su aplicación no depende de una fórmula rígida, sino que "[l]a determinación de si debe acumularse a una parte en un pleito depende de los hechos específicos de cada caso". *López García v. López García*, *supra*, a la pág. 65. Por consiguiente, los tribunales tienen el deber de realizar un análisis sobre los derechos de las partes que no estén presentes y de las circunstancias particulares del pleito: el tiempo, el lugar, las alegaciones, la prueba y las clases de derechos e intereses en conflicto. *Colón Negrón et al. v. Mun. Bayamón*, *supra*, a las págs. 511-512.

**-E-**

En nuestro ordenamiento jurídico, las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 893 (2008). Lo anterior se fundamenta en el conocimiento

especializado y la experiencia *(expertise)* sobre la materia que su ley habilitadora le confiere jurisdicción. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 436 (1997); *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 DPR 656, 672-673 (1997). En otras palabras, el conocimiento especializado de la agencia justifica que se sostengan sus determinaciones. Por lo que, en virtud de nuestro ejercicio de revisión judicial, le debemos gran deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Dpto. Corrección*, 208 DPR 656, 673-674 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021).

Dentro de este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.,* 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. A. R. Pe.,* 152 DPR 116, 122 (2000). Esto significa que el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS*, 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

Ahora bien, esa presunción de legalidad no constituye un dogma inflexible que impide la revisión judicial si no existen las condiciones que sostienen la deferencia. En el caso de *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016), el Tribunal Supremo se expresó sobre el alcance de la revisión judicial y mencionó lo siguiente:

> *[L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida. Íd., a la* pág. 628.

Por ende, como norma general, el tribunal revisor le debe respeto y deferencia al dictamen administrativo. No obstante, si el foro revisor entiende que uno de estos factores está presente, podrá entonces modificar la decisión. De lo contrario, se abstendrá a ello. Es pertinente enfatizar que la doctrina no exige que la agencia tome la mejor decisión posible, sino que el criterio a evaluar es si la misma, dentro de las circunstancias particulares del caso, es razonable. *De Jesús v. Depto. Servicios Sociales*, 123 DPR 407, 417-418 (1989). Por ende, si existe más de una interpretación razonable de los hechos, ordinariamente se avalará la decisión del foro administrativo. *Super Asphalt v. AFI y otros*, *supra*, a la pág. 819; *Torres Rivera v. Policía de PR*, *supra*, a la pág. 628.

En lo concerniente al alcance de la revisión judicial, la sección 4.5 de la de Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico limita la discreción del tribunal revisor sobre las determinaciones de hecho que realiza la agencia administrativa. 3 LPRA sec. 9675. Como consecuencia, la revisión judicial de los tribunales para determinar si un hecho se considera probado o no se limita conforme la siguiente norma:

> *El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.*

*Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.*

*Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.* Ley Núm. 38-2017, 3 LPRA sec. 9675.

El Tribunal Supremo de Puerto Rico define el concepto de evidencia sustancial como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero v. Toyota,* 163 DPR 716, 728 (2005); *Misión Ind. P.R.* v. *J.P., supra,* a la pág. 131. Además, dicho Foro ha reiterado que:

> *Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. Domínguez v. Caguas Expressway Motors, 148 DPR 387, 397-398 (1999); Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 686 (1953).*

Por tal razón, es la parte que impugna la decisión administrativa la que tiene que producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador, de forma que éste no pueda concluir que la decisión de la agencia fue justa, porque simple y sencillamente la prueba que consta en el expediente no la justifica. Ello implica que "[s]i en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor". *Domínguez v. Caguas Expressway Motors, supra,* a la pág. 398; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999).

**III.**

Según revela el tracto procesal ya discutido, el DACo emitió una "Resolución" mediante la cual decretó la resolución del contrato de compraventa suscrito entre las partes. Esto, tras determinar la existencia de un vicio oculto que recae sobre un aspecto determinante para la adquisición del vehículo. Específicamente, porque FAI no completó el registro del motor y, conforme la reglamentación aplicable, el vehículo adquirido por la Sra. Rodríguez Díaz no puede ser utilizado en las vías públicas del País.

En su escrito, FAI alega que la "Resolución" del DACo gravita únicamente bajo la figura del saneamiento por evicción, y que no procede la nulidad del contrato bajo dicha figura. Además, sostiene que no se presentó prueba de vicios ocultos que justifiquen el remedio concedido. No le asiste la razón.

En primer lugar, debemos mencionar que, tras una lectura del dictamen recurrido, se desprende con meridiana claridad que, **el remedio otorgado por el DACo fue el saneamiento por vicios o defectos ocultos**, **consistentes en que**: (**1**) **el motor que tenía el vehículo no estaba registrado a nombre del vendedor**, **y** (**2**) **el vendedor no le informó este defecto al comprador verbalmente ni por escrito**. Según surge de la "Querella" presentada por la Sra. Rodríguez Díaz, esta última optó por reclamar la "cancelación inmediata del contrato de compraventa",[5] remedio que el DACo estaba facultado para conceder, al amparo del Art. 1263 del Código Civil, *supra.*

En el presente caso: (1) el vehículo fue transmitido a título oneroso, (2) al tiempo de la adquisición el vehículo no tenía motor registrado, por lo que el vicio es preexistente al momento de la venta, (3) la Sra. Rodríguez Díaz desconocía este hecho, (4) se trata

---

[5] Véase, "Querella" a la pág. 6; apéndice pág. 23.

de un defecto grave que hace la cosa impropia para el uso a que se le destina, ya que impide que el vehículo pueda ser utilizado en las vías públicas del País, y (5) la parte recurrida presentó su causa de acción dentro del plazo legal de 6 meses. Por estimar que se han cumplido todos los requisitos necesarios para que opere la figura del saneamiento por defectos ocultos, actuó correctamente el DACo al conceder el remedio solicitado. Sin duda, el defecto que presenta el vehículo recae sobre un aspecto determinante para la adquisición del bien, por lo que procede la resolución total del contrato.

Contrario a la postura del recurrente, la "Resolución" recurrida no le imputa a FAI responsabilidad por evicción. Claramente, no estamos ante una sentencia firme o resolución administrativa inapelable por la cual se haya vencido al adquirente en virtud de un derecho anterior a la adquisición.

Por otro lado, FAI cuestiona la partida de $1,000.00 que el DACo le impuso como pago en daños por angustias mentales. Su contención es que, "no se alegó ni se probó durante la vista administrativa vicios o defectos ocultos de la cosa vendida conocidos por Flash Auto y no manifestados a la Querellante". En otras palabras, la parte recurrente aduce que, como desconocía los vicios o defectos ocultos, la Sra. Rodríguez Díaz no tenía derecho a que se le indemnizara por los daños y perjuicios ocasionados. Diferimos.

Lo cierto es que, en este caso, **FAI debió conocer el defecto**. Como ya discutimos, la Regla 31 del Reglamento de Garantías dispone que, para poder vender un vehículo usado, es necesario que este sea inspeccionado, **y que el vendedor se asegure "que tenga el 'vin number' en todas las piezas"**. (Énfasis provisto). A pesar de lo anterior, la Sra. Aida Merle Ibarra, dueña del dealer querellado, **testificó que ella no inspeccionó el**

**vehículo para asegurarse que los números de motor y de la caja eran los mismos**.[6]  Somos del criterio que, el no ofrecerle la información correcta a la parte recurrida impidió que esta última tuviese un conocimiento completo de todos los elementos relacionados con la unidad que adquiría, privándosele así de emitir un consentimiento informado.

La Sra. Rodríguez Díaz actuó conforme a la creencia de que el vehículo que estaba comprando era apto para ser transitado por las vías públicas del País.  Ciertamente, el hecho de que el motor del vehículo no estaba registrado a nombre del vendedor era un elemento esencial a considerar al momento de contratar.  Esto es evidente cuando, tan pronto se percata del problema, la parte recurrida presenta su reclamación y solicita la cancelación del contrato de compraventa.

Tras evaluar los hechos particulares del presente caso, concluimos que FAI actuó de manera dolosa al no divulgar esta información, viciando así el consentimiento de la compradora.  La parte recurrente no actuó accidentalmente o por desconocimiento, sino ignorando la reglamentación aplicable a su negocio que, de haberse cumplido, se hubiese procurado un consentimiento válido por parte del comprador. Para llegar a esta conclusión no solo consideramos la reglamentación aplicable, sino también el hecho de que la dueña del dealer querellado testificó que se dedicaba desde hace más de 10 años a comprar vehículos en subasta, y aceptó que el tipo de problema que se presenta en este caso puede surgir cuando se compran vehículos en subasta.[7]

Por ende, habiéndose determinado la existencia del dolo,[8] procede la concesión de daños al amparo del Art. 1263 de nuestro Código Civil, *supra.*  Recordemos que, para efectos de los vicios

---

[6] Véase, "Resolución" determinación de hecho número 8.

[7] Véase, "Resolución" determinación de hecho número 8.

[8] El Art. 1263 del Código Civil, *supra*, solo exige que el transmitente haya actuado con dolo. Por lo que, resulta inconsecuente si el dolo fue incidental o causante.

ocultos, el desconocimiento que pudiera tener la parte recurrente en cuanto a los números de motor es irrelevante, puesto que el transmitente será responsable, aunque ignore los defectos. Art. 1261 del Código Civil, *supra.*

Adicionalmente, FAI nos solicita decretar la nulidad de los procedimientos administrativos ante el DACo, por falta de parte indispensable. Su postura es que, como el motor está registrado a nombre de Universal, y ésta no se ha incluido en el pleito, estamos impedidos de conceder un remedio sin lesionar o afectar sus derechos. Tampoco tiene razón.

Cónsono con el derecho discutido en el acápite anterior, la Regla 16.1 de Procedimiento Civil, *supra,* requiere de un enfoque pragmático. Por lo que, al momento de determinar si Universal es parte indispensable, debemos evaluar los hechos específicos del caso. Luego de tal consideración, concluimos que **Universal no es parte indispensable en la acción de epígrafe**. La controversia que atendemos estriba sobre la resolución de un contrato de compraventa del cual Universal no es parte. Aunque el DACo determinó que el número de serie del motor del vehículo en cuestión es KNDJ33AU1L7023992,[9] y que ese número corresponde a un vehículo registrado a nombre de Universal,[10] lo cierto es que, ello no le otorga a Universal un interés real e inmediato que impida la confección de un remedio en este caso. Atendemos el incumplimiento de la parte recurrente con las reglamentaciones aplicables al negocio de compraventa de vehículos usados, y las repercusiones de dicho incumplimiento. Aunque la parte recurrente omitió registrar el motor, esto no significa que los derechos e intereses de Universal quedarán afectados por nuestros pronunciamientos. En vista de lo anterior, determinamos que

---

[9] Véase, "Resolución" determinación de hecho número 6.
[10] Véase, "Resolución" determinación de hecho número 7.

Universal no es parte indispensable en este caso, y no estamos impedidos de conceder un remedio final y completo sin afectarlo.

Asimismo, la parte recurrente trae ante nuestra atención que, en la "Resolución" emitida por el DACo, nada se dispuso en cuanto a la entrega del vehículo. Como se sabe, nuestro Código Civil reconoce diversas modalidades de obligaciones condicionales, incluyendo la suspensiva y la resolutoria. Una condición "es resolutoria si ocurrido el hecho se extingue el efecto del negocio jurídico". Véase, Art. 303 del Código Civil, 31 LPRA 6241. El contrato de compraventa es uno bilateral que conlleva prestaciones recíprocas y, como tal, se encuentra implícita la facultad de las partes para resolver extrajudicialmente el contrato cuando se incumple una obligación principal. Véase, Art. 1255 del Código Civil, 31 LPRA 9823. La resolución de un negocio jurídico opera retroactivamente y, si el contenido es una prestación de dar, el objeto debe entregarse o restituirse, incluyendo sus accesorios y frutos pendientes. Véase, Art. 306 del Código Civil, 31 LPRA 6244.

En el caso de autos, el DACo emitió una "Resolución" por la cual decretó la resolución del contrato celebrado entre las partes. Se trata de un contrato de compraventa cuyo contenido es una prestación de dar, por lo que, según las disposiciones que anteceden, el objeto debe restituirse. Por ende, **decretada la resolución del contrato**, **corresponde la devolución recíproca de las contraprestaciones**. En atención a lo cual le corresponde a FAI restituir los pagos, y la Sra. Rodríguez Díaz deberá hacer entrega del vehículo en controversia.

Finalmente, la parte recurrente alega la existencia de un enriquecimiento injusto, debido a que se le condenó al pago de las mensualidades satisfechas por la Sra. Rodríguez Díaz, incluyendo sus intereses. Enfatiza que dichos intereses sólo beneficiaron a Popular Auto.

Es norma reiterada que, una parte no puede hacer un planteamiento ante este foro apelativo sin antes haberlo traído ante la consideración del foro primario, bien sea administrativo o judicial. Como se sabe, este foro revisor se abstendrá de adjudicar cuestiones no planteadas ante los foros de primera instancia. *Sánchez Ruíz v. Higueras Pérez, et al*, 203 DPR 982, 993 (2020). Debido a que lo relativo a la figura del enriquecimiento injusto no fue traído ante el DACo, no consideraremos las alegaciones relacionadas con este aspecto.[11]

Evaluada la totalidad de la prueba presentada, concluimos que la determinación del DACo fue correcta. La parte recurrente no aportó evidencia suficiente para derrotar la presunción de corrección que caracteriza la decisión del foro administrativo. Es importante enfatizar que, al desempeñar nuestra función revisora, estamos obligados a considerar la especialización, experiencia y las cuestiones propias de la discreción o pericia de las agencias administrativa. En vista de lo anterior, consideramos que la agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. La totalidad de la evidencia que obra en el récord nos obliga a confirmar el dictamen recurrido.

**IV.**

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, se confirma la "Resolución" recurrida, emitida por el Departamento de Asuntos del Consumidor.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[11] No obstante, destacamos que la figura del enriquecimiento sin causa no aplica al caso de epígrafe, por ser improcedente en derecho.